(58 South. 831.)

No. 18.931.

MAYS et al. v. TREMONT LUMBER CO.

(June 4, 1912.)

*(Syllabus by the Court.)*

MASTER AND SERVANT (§ 244*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Conceding that the danger to a minor, fairly intelligent and able bodied, employed to feed a conveyor with sawdust from a pile say 30 feet high in a fuelhouse, that such unstable material may slide down and cover him if he undermines or digs trenches into the pile is not an obvious one. Nevertheless, if, in addition to such warning as the conditions themselves convey, the minor is specifically warned, the consequence of his neglect to heed the warning cannot be attributed to negligence on the part of his employer.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 776–777; Dec. Dig. § 244.*]

Appeal from Fourth Judicial District Court, Parish of Lincoln; R. B. Dawkins, Judge.

Action by Pleny Mays and another against the Tremont Lumber Company. Judgment for defendant, and plaintiffs appeal. Affirmed.

Perrin & Perrin, Thompson & Thompson, and J. S. Atkinson, for appellants. Stubbs, Russell & Theus, for appellee.

MONROE, J. Plaintiffs prosecute this appeal from a judgment rejecting their demand for damages sustained by them as the result of the death of their minor son, alleged to have lost his life whilst in the employ and through the negligence of defendant.

It appears from the evidence that defendant had a fuel house of one room, measuring 60 by 50 feet and 30 feet high, into which, when its mill was running, sawdust and chips or small slabs were carried by an endless chain, working in a trough, which entered the room near the top and discharged its load about the middle of the room, so that it formed a cone-shaped pile, of which the base extended to within two or three feet of the walls, and the apex arose, probably, to the trough in which the chain worked. Across the room, 20 feet from either end and from each other and sunk in the floor, were two other troughs, 14 by 16 or 16 by 18 inches, through which other conveyor chains worked, which carried the sawdust and chips to the furnaces, through apertures in the walls 3½ by 3 feet in height and width.

When the mill was in operation, the outgoing carriers were fed automatically by the incoming carrier, but when the mill was shut down, and no sawdust or slabs were being brought in, the fuel needed to keep up steam for the other purposes for which it was required in the plant had to be forked or shoveled or otherwise gotten into the outgoing conveyors by hand. The only means of entrance into the room were through the apertures mentioned, and the room was lighted by four incandescent bulbs, suspended at a distance of two or three feet from the top. Plaintiffs' son was 18 or 19 years of age, and is shown to have been able bodied and of fair intelligence. He had been working about the mill for say a month before the accident, and during part of that time had been employed in feeding the chain in the fuelhouse—the work in which he was engaged at the time of the accident. But it appears that his work had not been very satisfactory, and that he had been discharged. On the evening of the night of the accident, however, another man, who had been assigned to that job, with the consent of the chief engineer and master mechanic, substituted the minor in his place, and the latter went to work about 7 or 8 o'clock in the evening, and so continued until some time after 12, when he went into the engine room in order to get a drink of water, and having obtained the water, returned to the fuel room. Shortly afterwards, as the supply of fuel appeared to be insufficient, the man who had been left in charge went into the fuel room, and, not finding the minor, concluded that he had gone off to the quarters, and sent another man to take his place, and the other man (Willie Huie), after he had been working for perhaps 20 minutes, and a certain quantity of the sawdust had been shoveled or made to slide into the conveyor, and had been carried out, thereby reducing the dimensions of the pile, discovered one of the hands of the minor, which had thus been uncovered, at a point about 10 feet from the aperture through which he had entered the room, and, on further investigation, found that the boy was dead, and that his body was in a standing position, with his feet, as we understand it, on the floor, and his hand extended above his head. The witness says:

"I dug about three feet from the door [referring to the aperture that has been mentioned] and you know sawdust, when you shovel it, it will fall in, and it tumbled in that way, off the boy. * * * From the looks of it, he was covered about seven or eight feet. * * * He was standing up just as straight, like that. * * * He was standing on the floor; yes, sir."

The implements that were supplied for the doing of the work in question were shovels, or forks, with handles of the ordinary length, and an iron pipe say 22 feet long, and a wooden strip, perhaps longer, which were intended to be used for the loosening of the sawdust near the top of the pile, in order that it should slide down upon, or near, the conveyor, and in the one case be carried off, without further assistance, and in the other shoveled into the conveyor, and so carried out. The engineer, Lindsay, testifies that he had warned the boy against digging trenches into, and thereby undermining, the pile, "because it was dangerous, and that he must work back from the window [referring to the same aperture] all of the way, and, when it got too full, to take the pole and shake it up. * * * I explained to him to stay in front of the dust, and not to dig a trench back where the sawdust was deep."

It is evident, however, from the place where the body was found, and its position, that the boy had dug a trench into the pile for some 7 or 8, feet, and (assuming that he was of the average height) that he had so excavated it that there was alongside of him an unsupported vertical exposure of sawdust 12 or 14 feet high, which, breaking down with

the superincumbent mass, covered and suffocated him.

The result was most deplorable; but, conceding that the danger of the sliding of material so unstable as sawdust was not an obvious one, the warning which was given was sufficient to have placed the minor upon his guard.

In view, however, of the conditions described by the witnesses, and of their testimony, to the effect that by undermining the pile and bringing down upon the conveyor a large quantity of sawdust at one time the laborer was enabled to take a recess for an hour or two, we are inclined to the opinion that the unfortunate young man, the warning notwithstanding, chose to incur the danger, in order to obtain the respite; and we do not find that the consequence can be attributed to any negligence on the part of the defendant.

The judgment appealed from is therefore affirmed.